**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**EASTERN DIVISION**

**LATOYA DONABY** **PLAINTIFF**

**V.** **NO. 2:11–CV–00201–BD**

**MICHAEL J. ASTRUE, Commissioner,**
**Social Security Administration** **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Latoya L. Donaby seeks judicial review[1] of the denial of her application for adult supplemental security income (SSI).[2] Ms. Donaby received SSI as a child based on permanent hearing loss. Prior to the cessation of childhood benefits, the Commissioner notified Ms. Donaby that she was no longer eligible for childhood benefits.[3] After Ms. Donaby turned 18 years old, the adult eligibility rules applied. She sought SSI benefits under the adult rules,[4] but the Commissioner's administrative law judge (ALJ) determined that Ms. Donaby was not disabled.

---

[1]*See* 42 U.S.C. § 405(g) (providing for judicial review of final decisions by the Commissioner of the Social Security Administration).

[2]*See* docket entry # 2 (complaint).

[3]SSA record at p. 28.

[4]*Id*. at p. 45.

The ALJ determined that, despite having severe impairments—hearing loss and depressive symptoms[5]—Ms. Donaby had the residual functional capacity (RFC) to work at all exertional levels, with the following non-exertional limitations: she could hear noise at a moderate level only.[6] She could hear with hearing aids. She could hear and understand simple oral instructions. She could do unskilled work in which: (1) interpersonal contact was incidental to work performed, (2) the complexity of tasks was learned and performed by rote, with few variables and requires little judgment, and (3) the supervision required was simple, direct and concrete.[7] Because a vocational expert identified jobs that a person with Ms. Donaby's RFC could do,[8] the ALJ concluded that she was no longer disabled under the Social Security Act.[9] Ms. Donaby disagrees.

**Development of the record.** In seeking adult SSI, Ms. Donaby based disability solely on hearing loss,[10] but she now complains about depression. She contends the ALJ

---

[5]*Id*. at p. 17.

[6]*Id*. at p. 19.

[7]*Id*.

[8]*Id*. at p. 22.

[9]*Id*. at p. 23.

[10]*Id*. at p. 81 (stating she was disabled by hearing loss—mostly high pitched sounds—and reporting that her ability to work wasn't really limited; her ability to work depended on where she worked because she had just loss some sounds).

should have developed the record about depression by ordering a consultative mental examination.[11]

The ALJ has a duty to fairly and fully develop the record as to the matters at issue,[12] but "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."[13] Whether Ms. Donaby was disabled due to depression was never seriously at issue.

During the hearing, Ms. Donaby's mother characterized Ms. Donaby as stressed and depressed. The mother described Ms. Donaby as a quiet person who liked to stay to herself and did not like others knowing her personal affairs.[14] The mother wanted Ms. Donaby to have counseling,[15] but she had not taken Ms. Donaby to a counselor.

Ms. Donaby's medical records contain nothing about depression—no complaints to doctors about depressive symptoms, no observations by doctors about depressed mood. Reports from high school teachers characterized Ms. Donaby was a quiet, well-

---

[11]Docket entry # 11, pp. 9-10.

[12]*Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1973).

[13] *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

[14]SSA record at pp. 230-32.

[15]*Id*. at p. 233.

mannered student who had few problems in school.[16] The record showed Ms. Donaby engaged in typical teenage activities,[17] pursued employment,[18] completed a year of community college, and studied to become a nurse.[19]

The ALJ asked Ms. Donaby whether she was depressed and stressed. Ms. Donaby answered "yes," but offered nothing more.[20] To the extent Ms. Donaby had depressive symptoms, her activities and academic success showed her symptoms were not disabling. The mother's unsubstantiated and vague reports did not require the ALJ to order a consultative mental examination. The ALJ did not err.

**RFC determination**. Ms. Donaby asks the court to reverse and remand this case for consideration of the effect of depression and incontinence on her RFC.[21] She maintains that the ALJ's determination that she could work is not supported by substantial evidence because the ALJ did not consider depression and incontinence in determining her RFC.

---

[16]*Id*. at pp. 104 & 112.

[17]*Id*. at p. 99 & 221 (reporting that Ms. Donaby participated in sleep-overs, attended school ball games and church, and drove a car).

[18]*Id*. at p. 230 (reporting that Ms. Donaby was trying to find a job).

[19]*Id*. at 224-25.

[20]*Id*. at p. 234.

[21]Docket entry # 11, pp. 10-11.

"In determining the claimant's [RFC], the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments."[22] The medical evidence in this case established no exertional limitations and few non-exertional limitations.

Testing of Ms. Donaby's hearing showed sensory neural hearing loss in both ears.[23] That type of hearing loss is not readily curable, but "the loss is not often complete, so that hearing aids can fill the deficit."[24] The record shows that Ms. Donaby wore hearing aids that filled much of the deficit.

For example, Ms. Donaby reported that her hearing loss applied to high pitched sounds.[25] After testing her speech and language skills, the evaluator reported that Ms. Donaby "responded appropriately to environmental sounds, turned her head to locate a sound source, imitated words, and facial expressions indicated that she heard sound presented in her environment."[26]

---

[22]*Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

[23]SSA record at pp. 136-37.

[24]J. Ricker Polsdorfer, 3 The Gale Encyclopedia of Med. 1986 (4th ed.).

[25]SSA record at p. 81.

[26]*Id*. at pp. 139-40.

The evaluator also reported: (1) severe delay in receptive language (understanding what is said),[27] (2) moderate delay in expressive language (using words and sentences to communicate), and (3) 100% recognition of conversational speech by the unfamiliar listener.[28] These impairments supported the reduction of available work to the RFC determination, but did not preclude all work. Ms. Donaby conceded that her hearing loss did not really limit her ability to work, stating that "I can hear, I have just lost some pitches, it depends on where I work."[29]

Depression provides no basis for reversal because the record shows depressive symptoms did not limit Ms. Donaby's ability to work. She completed high school and engaged in school activities. For a while, she worked as a cashier for a grocery store; she lost her job for reasons unrelated to her hearing, speech, or depression. When questioned about Ms. Donaby's limitations and impairments, Ms. Donaby's teachers reported no problems with maintaining attention, completing tasks, or carrying out

---

[27]Tish Davidson & Brenda Lerner, 5 The Gale Encyclopedia of Med. 4075 (4th ed.) ("There are two basic categories of language disorders: expressive language disorders, which involves problems producing language and receptive language disorders, which involves problems understanding language.").

[28]SSA record at p. 140.

[29]*Id*. at p. 81.

instructions.[30] Her teachers seemed unaware of any impairment. In addition, the record reflects no evidence of typical depressive symptoms.[31]

Likewise, incontinence provides no basis for reversal because the record showed that incontinence did not limit Ms. Donaby's ability to work. After the hearing, a urologist treated Ms. Donaby for urinary incontinence. "Urinary incontinence is unintentional loss of urine that is sufficient enough in frequency and amount to cause

---

[30]SSA record at pp. 104 & 112.

[31]*See* Paul A. Johnson , Monique Laberge & William Atkins, 1 The Gale Encyclopedia of Mental Health 450 (3d ed.) ("Individuals affected with depressive disorders display a wide range of symptoms.).

Symptoms that characterize a depressive state include
feelings of hopelessness
feelings of guilt
feelings of worthlessness
a persistently sad or anxious mood
restlessness or irritability
a loss of interest in activities that were once considered pleasurable
difficulty concentrating, remembering, or making decisions
sleep disorders, including insomnia, early-morning awakening, and/or oversleeping
constant fatigue
eating disorders, including weight loss or overeating
suicidal thoughts and/or tendencies
recurrent physical symptoms that do not respond to the normal treatments of these symptoms, such as headaches, digestive problems, and chronic pain

*Id*. at pp. 450-51.

physical and/or emotional distress in the person experiencing it."[32] The urologist performed a medical procedure to stretch the urethra and improve the flow of urine.[33] The record reflects no further treatment. Although Ms. Donaby argues that the record does not indicate whether the procedure worked, the cessation of treatment indicates that the procedure resolved her problem. Moreover, she complained about having to get up two or three times nightly to go to the bathroom, but she did not complain about interference with daily activities.

To the extent Ms. Donaby suggests that limited concentration requires reversal,[34] the ALJ's hypothetical question incorporated limitations flowing from limited concentration. The ALJ asked the vocational expert about jobs in which tasks were learned by rote, with few variables, and required little judgment.[35] Such jobs accommodate limited concentration. The hypothetical question was properly phased because it set forth impairments supported by substantial evidence in the record and accepted as true by the ALJ.[36] The vocational expert answered the question and

---

[32]Paula Anne Ford-Martin & J. Rebecca Frey, 6 The Gale Encyclopedia of Med. 4509 (4th ed.).

[33]SSA record at pp. 167-68.

[34]Docket entry # 11, p. 11.

[35]SSA record at p. 239.

[36]*Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001).

identified jobs that existed in significant numbers in the economy.[37] Because a vocational expert's testimony answering a properly phrased hypothetical question constitutes substantial evidence, the ALJ's RFC decision is supported by substantial evidence.[38] The ALJ did not err.

**Conclusion**. No evidence suggests Ms. Donaby was unable to work under adult SSI rules. Substantial evidence supports the ALJ's decision denying Ms. Donaby's application. The ALJ made no legal error. For these reasons, the court DENIES Ms. Donaby's request for relief (docket entry # 2) and AFFIRMS the decision denying the applications.

IT IS SO ORDERED this 3rd day of October, 2012.

UNITED STATES MAGISTRATE JUDGE

[37] *Id*. at p. 240.

[38] *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011).